UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBIN Y. WISE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:14-cv-00988-SEB-MJD ) |
| CAROLYN W. COLVIN, | ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Robin Wise ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED**.

**Procedural History and Background**

Plaintiff filed applications for DIB and SSI in June 2011, alleging an onset of disability on January 20, 2011. [R. at 16.] She was 55 years old at the time of the alleged onset and had past work experience as a mail sorter and caterer helper. [R. at 36-37.] She alleged disability due to obesity, chronic obstructive pulmonary disease ("COPD"), and the residual effects of past traumas to her hip, back, leg, and wrist. [Dkt. 15 at 3.][1]

---

[1] Plaintiff recited the relevant factual and medical background in more detail in her opening brief. [*See* Dkt. 15.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 16.] Because these facts involve Plaintiff's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and will articulate only specific facts as needed herein.

Plaintiff's applications were denied initially on August 24, 2011, and upon reconsideration on January 23, 2012. [R. at 16.] Plaintiff requested a hearing, which occurred before Administrative Law Judge ("ALJ") Thomas Wang on November 21, 2012. [*Id.*] Also present were Plaintiff's attorney, Katrina Hecht, and a vocational expert, George Parsons. [R. at 30.] The ALJ concluded that Plaintiff was not disabled at any time from her alleged onset date through the date of the ALJ's December 5, 2012 decision. [R. at 25.] The Appeals Council denied Plaintiff's request for review on April 15, 2014, [R. at 1-5], rendering the ALJ's decision final. Plaintiff filed her complaint with this Court on June 13, 2014. [Dkt. 1.]

## **Applicable Standard**

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. The Court, that is, "must be able to trace the ALJ's path of reasoning" from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

## The ALJ's Decision

The ALJ first determined that Plaintiff met the insured status requirements of the Act through March 31, 2014. [R. at 18.] Applying the five-step analysis, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity ("SGA") since January 20, 2011, the alleged onset date. [*Id.*] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "obesity" and "residual effects of past trauma to hip, back, leg, and wrist." [*Id.*] He also considered Plaintiff's COPD, but determined that this impairment was not severe. [R. at 19.]

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed impairment. [R. at 20.] The ALJ specifically considered Listing 1.04 to account for Plaintiff's back impairment and Listing 1.02 to account for Plaintiff's wrist and hip impairments. [*Id.*] He also noted that obesity is not a Listed impairment, but considered the effects of Plaintiff's obesity with reference to Listings 1.00Q (effects of obesity on musculoskeletal impairments), 3.00I (effects of obesity on respiratory impairments), and 4.00I (effects of obesity on cardiovascular impairments). [R. at 20-21.]

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). He concluded that Plaintiff could:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she should never climb ladders, ropes, or scaffolds and should limit to an occasional basis her climbing of ramps or stairs, crouching, and crawling. She should limit to a frequent basis, rather than a constant basis, her balancing; stooping; and kneeling and the handling (gross manipulation) with her left hand.

[R. at 21.] Based on this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a caterer helper as that work is generally performed in the national economy. [R. at 24.] He thus concluded that Plaintiff was not disabled. [R. at 25.]

**Discussion**

Plaintiff presents three arguments for remand of the ALJ's decision. She contends that the ALJ did not "properly evaluate [her] mental impairment" [Dkt at 11]; that the ALJ "failed to properly assess the effects of obesity on [her] respiratory and physical impairments" [*Id.* at 8]; and that the ALJ erred by not considering her unsuccessful attempts to obtain work following the last years in which she engaged in SGA. [*Id.* at 13.]

**A. Mental Impairment**

The ALJ's opinion specifically discussed Plaintiff's obesity, COPD, and past injuries to her hip, back, leg, and wrist. [*See, e.g.*, R. at 18-19.] The ALJ, however, did not discuss any mental impairments. Plaintiff now contends that the record before the ALJ included evidence of anxiety, depression, and stress, and that the ALJ erred by failing to consider these impairments. [Dkt. 15 at 12.]

Plaintiff specifically cites four pieces of evidence. First, she notes that during a telephone interview with an SSA employee, the employee observed that Plaintiff "had problems focusing on one thing at a time." [R. at 145.] Second, she notes that she once complained to her doctor about "recent stress at home." [R. at 233.] Third, she cites an August 2012 treatment note from Wishard Health Clinic in which she stated that "she has had ongoing trouble with anxiety and depression all of her life." [R. at 266.] Finally, she notes that she testified at the hearing that she had trouble with anxiety and depression and suffered side effects from anti-anxiety medication. [*See, e.g.*, R. at 43-44.] She then contends that an ALJ is "under an obligation to discuss all impairments," [Dkt. 15 at 12], such that the ALJ's failure to discuss these pieces of evidence renders his conclusions erroneous.

Plaintiff is correct that the SSA imposes a duty upon an ALJ to consider all of a claimant's "medically determinable impairments." *See, e.g.*, 20 C.F.R. § 404.1545(a)(2) (citations omitted) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'"). To establish a "medically determinable" impairment, a claimant must generally put forth "objective" evidence, such as "medical signs and laboratory findings," indicating that the impairment exists. *See, e.g.*, *Jones v. Heckler*, 609 F. Supp. 304, 308 (E.D. Wis. 1985) (observing the "critical importance to any disability finding of objective data supporting the existence of a medically determinable impairment"); *see also* 20 C.F.R. § 404.1529(a) ("By objective medical evidence, we mean medical signs and laboratory findings.").

In this case, the record of Plaintiff's mental impairments is relatively limited, but it nonetheless establishes that she had a "medically determinable" mental impairment. The August 2012 treatment note is especially probative: At that appointment, the clinic staff reported that they saw Plaintiff at the request of her primary care physician, and that the physician "thinks [Plaintiff] is depressed and needs to be seen." [R. at 266.] The clinic also prescribed Buspirone to treat Plaintiff's anxiety, [*id.*; *see also* R. at 207], and made follow-up plans to "work on her depression." [R. at 266.] The appointment thus indicates that Plaintiff's medical providers recognized that she needed mental treatment, thereby providing the sort of medical evidence that could support a finding that she had a "medically determinable" mental impairment.

In addition, the need for objective medical evidence is reduced in situations involving mental illness. As the Seventh Circuit has repeatedly observed, "[p]ain, fatigue, and other subjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (quoting *Cooper v. Casey*,

6

97 F.3d 914, 917 (7th Cir.1996)). In these cases, it is thus inappropriate to insist on objective evidence, and an ALJ must acknowledge a claimant's subjective complaints. *See id.*; *see also Matzke v. Barnhart*, No. 05-C-606-C, 2006 WL 6010911, at *7 (W.D. Wis. May 23, 2006) (citation omitted) ("An ALJ may not reject a disability application in which fibromyalgia is the claimed impairment on the ground that the claimant failed to produce objective evidence of a medically determinable impairment. This rule also applies to other conditions for which there are no objective diagnostic tests, such as chronic fatigue syndrome, migraine headaches and mental illnesses."). In this case, then, Plaintiff's subjective complaints of stress and anxiety, [*see, e.g.*, R. 43-44, 46-47, 233], were legitimate indications of mental illness that helped establish that she did have a medically determinable mental impairment. As a result, the ALJ erred by failing to discuss Plaintiff's mental impairment. *See* 20 C.F.R. § 404.1545(a)(2).[3]

Any error, however, was harmless. As the Supreme Court has noted, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). In addition, the ALJ in this case concluded his opinion at step four. [R. at 24.] Hence, at all phases of the sequential evaluation process in this case the burden was on Plaintiff to show that she was disabled. *See, e.g.*, *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992) ("The claimant bears the burden of proof in steps one through four.").

---

[3] The ALJ's error in this case is perhaps understandable, as Plaintiff's original application did not allege disability due to a mental impairment. [*See* R. at 64.] This omission, however, does not preclude consideration of Plaintiff's mental limitations. *See, e.g.*, *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir. 1981) ("Although it is true that plaintiff did not specifically list alcoholism as a cause of her claimed disability in her application for benefits, this fact is of little import. . . . [T]he Administration's own regulations provide that an assessment of residual functional capacity is required not only with respect to those physical or mental capacities that are in doubt by reason of the claimant's allegations, but also those as to which doubt arises by reason of the evidence adduced."); *see also Robinson v. Astrue*, 667 F. Supp. 2d 834, 841 n.7 (N.D. Ill. 2009) ("To be sure, Robinson herself did not explicitly identify syringomyelia as a basis for her claim of disability. However, an ALJ is required to consider not only those impairments asserted by claimant, but also those about which the ALJ has received evidence.").

At step three, Plaintiff thus had the burden to show that her impairments met or equaled a Listing by showing that the impairments "satisf[ied] all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Plaintiff failed to do so: Her brief mentions in passing Listing 12.00, [Dkt. 15 at 12], which describes the functional criteria that ALJs use to evaluate mental impairments. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 ("We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."). Plaintiff, however, offers no analysis of these functional criteria and provides no indication that her mental impairment actually affects her ability to function in these areas. [*See* Dkt. 15 at 12-13.] She thus has not shown how her impairment satisfies *any* of the "various criteria specified in the listing," let alone "all" of the criteria in the listing. *Ribaudo*, 458 F.3d at 583. Any error at step three was therefore harmless. *See, e.g.*, *Cain-Wesa v. Astrue*, No. 11-C-1063, 2012 WL 2160443, at *17 (E.D. Wis. June 13, 2012) ("[P]laintiff fails to explain how her impairment(s), alone or in combination, medically equal a Listing or even to identify any particular Listing she might equal. Therefore, the ALJ's failure to say more on medical equivalence was, at most, harmless error.").

Next, Plaintiff had the burden at step four to show that her RFC did not allow her to perform her past relevant work. *See* 20 C.F.R. § 404.1560. Plaintiff, however, never explained how her mental impairments affected her RFC. The closest she came to doing so was at the hearing before the ALJ. There, she testified that her anti-anxiety medication caused side effects such as dizziness and vertigo, and that she would sit down or sleep after taking the medication. [R. at 43-44.] Such side effects could potentially interfere with Plaintiff's ability to perform job-related tasks, but Plaintiff never explained how long the effects lasted, how severe the effects

were, or which job-related tasks the side effects precluded. [*See* R at 42-43.] In addition, Plaintiff began taking the medication only on August 31, 2012. [R. at 207.] Thus, at the time of the ALJ's December 5, 2012 decision, Plaintiff could have been experiencing the side effects—at most—for slightly more than three months. As a result, Plaintiff's side effects could not meet the durational requirement for a finding of disability, and thus could not be the basis for concluding that Plaintiff was disabled. *See, e.g.*, SSR 82-52 ("To be found disabled, an individual must be unable to engage in any [SGA] by reason of a medically determinable physical or mental impairment(s) which can be expected to result in death, or which has lasted or can be expected to last[4] for a continuous period of at least 12 months. In considering 'duration,' it is the inability to engage in SGA because of the impairment that must last the required 12-month period.").

Plaintiff's brief also fails to establish any functional limitations. Plaintiff alleged that, following the end of her employment as a caterer helper, she had on several occasions tried and failed to hold a job. [Dkt. 15 at 14.] However, she did not explain *why* she could not hold a job, [*see id.*], and thus provided no evidence that her alleged mental limitations had any impact on her ability to work. Additionally, the Commissioner specifically noted that Plaintiff had not identified any functional limitations resulting from her alleged mental limitations, [Dkt. 16 at 9], but Plaintiff elected not to file a reply brief disputing this contention. Plaintiff thus had the opportunity to explain the functional impact of her mental impairment, but she did not do so. She therefore has not satisfied her burden to show that her mental impairments affected her RFC, and the ALJ's failure to discuss Plaintiff's mental impairment was a harmless error that does not

---

[4] Whether Plaintiff's side effects could have been "expected to last" more than twelve months is doubtful. As noted above, the burden at this stage of the evaluation process was on Plaintiff to prove her disability, and she never described how long she expected to be on the medication. [*See* R. at 43-44.] Also, at the appointment at which the medication was first prescribed, Plaintiff made plans to return to the clinic four months later for reevaluation by her primary care physician. [R. at 266.] She and her doctor thus could have confronted any lingering side effects at that time.

9

warrant remand. *See, e.g.*, *Dickman v. Astrue*, No. 08-C-898, 2009 WL 1107807, at *11 (E.D. Wis. Apr. 23, 2009) ("Even now, plaintiff suggests no specific restrictions on her ability to work based on mental impairments. Thus, any possible error in the ALJ's evaluation was harmless.").

### B. Discussion of Obesity

At step two of the sequential evaluation process, the ALJ cited SSR 02-1p and determined that Plaintiff had "a severe impairment of obesity." [R. at 19.] At step three, the ALJ then "considered the claimant's obesity using the criteria of the musculoskeletal, respiratory, and cardiovascular impairments under Listing 1.00Q, 3.00I, and 4.00I, respectively." [R. at 21.] He concluded that Plaintiff's obesity did not "rise to a condition of listing level severity." [*Id.*] Plaintiff now contends that this analysis was flawed because it did not actually comply with SSR 02-1p, in that the ALJ provided "no discussion of how Wise's obesity was considered in combination with her other impairments and the effect it may have on the equaling of specific Listings." [Dkt. 15 at 9.]

SSR 02-1p provides that an ALJ must consider obesity when determining 1) whether an individual has a medically determinable impairment; 2) whether any such impairment is severe; 3) whether an individual's impairments meet or equal a Listed impairment; and 4) whether an individual's impairments prevent him from doing past relevant work or other work in the national economy. SSR 02-1p. It also instructs adjudicators to account for obesity "when assessing an individual's residual functional capacity," and it "remind[s] adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Id.*

The ALJ in this case complied with these requirements. At step two of the sequential evaluation process, the ALJ found that Plaintiff had a "severe impairment of obesity." [R. at 19.]

10

He also noted that her obesity could "be expected to aggravate the pain from her musculoskeletal impairment," indicating he did in fact consider the effect of Plaintiff's obesity in combination with Plaintiff's other impairments. At step three, the ALJ then "considered the claimant's obesity" and found that it did not "give[] rise to a condition of listing level severity." [R. at 20-21.] Again, he considered Plaintiff's obesity "in combination with any other impairments," and he specifically considered the impact of Plaintiff's obesity on her "musculoskeletal, respiratory, and cardiovascular impairments." [R. at 21.]

The ALJ then turned to Plaintiff's RFC. At this stage, SSR 02-1p provides that an adjudicator should account for the effect that obesity may have on exertional activities such as "sitting, standing, walking, lifting, carrying, pushing, and pulling;" and on postural functions, such as "climbing, balanc[ing], stooping, and crouching." SSR 02-1p. It again emphasizes that the "combined effects of obesity with other impairments may be greater than might be expected without obesity," and notes as an example that an obese person with joint pain or arthritis may have more pain or greater limitations than a non-obese person with the same condition. *Id.*

In this case, the ALJ properly applied this guidance. He specifically restricted Plaintiff's exertional activities by limiting her RFC to "light work." [R. at 24.] He also imposed limitations on her postural function by stating that she "should not climb ladders, ropes, or scaffolds," and by limiting her squatting, crouching, and crawling. [*Id.*] In doing so, he noted that state agency physician Dr. Mangala Hasanadka had reviewed Plaintiff's records and had imposed similar limitations to account for "the claimant's combination of chronic pain, obesity, and COPD." [R. at 23.] The ALJ then specifically cited Hasanadka's findings in his final summary of Plaintiff's RFC, [R. at 24], confirming that his RFC analysis did in fact account for Plaintiff's obesity and its combined effects on Plaintiff's ability to function. *See, e.g.*, *Skarbek v. Barnhart*, 390 F.3d

11

500, 504 (7th Cir. 2004) (approving RFC determination where "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [claimant's] obesity").[5]

Finally, the ALJ applied this RFC at step four. [*See* R. at 24-25.] He thus incorporated the limitations caused by Plaintiff's obesity in his analysis at this step, and he therefore complied with SSR 02-1p's requirement that he consider Plaintiff's obesity in determining whether she could perform her past relevant work. As a result, the Court concludes that the ALJ properly analyzed Plaintiff's obesity.

Plaintiff's own brief confirms this conclusion. Plaintiff vaguely alleges that "[o]besity can cause limitation of function," but she does not allege any specific errors in the ALJ's opinion. [*See* Dkt. 15 at 9-11.] This sort of speculation about the effect of Plaintiff's obesity is not enough to identify any harmful errors in the ALJ's analysis. *See, e.g.*, *Skarbek*, 390 F.3d at 504 ("Notably, [claimant] does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk."); *see also Givens v. Colvin*, No. 4:12-CV-44-WGH-RLY, 2013 WL 1102754, at *4 (S.D. Ind. Mar. 15, 2013), *aff'd*, 551 F. App'x 855 (7th Cir. 2013) ("It is the plaintiff who bears the burden of articulating how his obesity has limited his functioning and how it has aggravated his other impairments."). By failing to specify what the ALJ did wrong, Plaintiff has not carried her burden and has instead implicitly confirmed that the ALJ's analysis was proper. As a result, the ALJ's discussion of Plaintiff's obesity was not erroneous and Plaintiff's argument does not require remand.

---

[5] Plaintiff argues that it was nonetheless erroneous for the ALJ in this case to rely on the state agency reviewing experts. She asserts instead that the ALJ should have summoned a medical advisor to obtain an updated opinion on Plaintiff's obesity. [Dkt. 15 at 11.] As support, she contends that "the state agency physicians did not take Wise's obesity into account when reviewing [her] file." [*Id.*] This contention is inaccurate: As noted above, state agency physician Dr. Hasanadka specifically assessed the combined effect of Plaintiff's obesity and other impairments. [*See* R. at 251 (finding that only light work was appropriate for Plaintiff, "given the combination of COPD, obesity & chronic pain").] In addition, Dr. Hasanadka listed obesity as Plaintiff's secondary diagnosis. [R. at 244; *see also* R. at 59-60.] It is therefore baseless for Plaintiff to contend that the state physicians did not consider her obesity.

## C. Unsuccessful Attempts to Obtain Work

At step four, the ALJ noted that Plaintiff had worked as a caterer helper from May 2006 to December 2007 and had done so at a level that constituted substantial gainful activity. [R. at 24.] He then concluded that Plaintiff could perform this past relevant work, such that she was not disabled. [R. at 24-25.] Plaintiff argues this conclusion was erroneous because the ALJ did not account for Plaintiff's numerous unsuccessful attempts to find and hold jobs in the years following 2007. [Dkt. 15 at 14.] She argues that substantial gainful activity requires holding a job "for a significant period of time" and that her repeated short-term employment is evidence that she cannot engage in substantial gainful activity. [*Id.* at 14.]

This argument is unpersuasive. The ALJ's conclusion at step four was that Plaintiff could perform her past relevant work as a caterer helper. [R. at 24.] He did *not* conclude that Plaintiff could perform any of the later jobs that she was allegedly unable to hold for a prolonged period of time. The fact that Plaintiff could not retain these *other* jobs says little about her ability to perform the job as a caterer helper that was actually the subject of the ALJ's conclusion.

Moreover, the ALJ's conclusion complied with the regulations governing step four of the evaluation process. Under these regulations, "[p]ast relevant work" is work that was performed "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Plaintiff in this case worked as a catering helper from May 2006 to December 2007, [R. at 170], and she does not dispute that she worked in the job long enough to learn to do it. [*See* Dkt. 15 at 13-14.] Additionally, Plaintiff's records show that she earned enough as a catering helper that the job constituted substantial gainful activity. [*See* R. at 142.] The ALJ's conclusion that Plaintiff could perform the job as generally performed in the national economy was thus a proper basis for finding that Plaintiff

13

was not disabled, *see* 20 C.F.R. § 404.1560(b)(2), and the fact that Plaintiff allegedly could not hold *different* jobs is simply irrelevant to this conclusion.

Plaintiff then argues that the ALJ's step four conclusion was nonetheless flawed because his underlying RFC analysis was also flawed. [Dkt. 15 at 14.] She notes that under SSR 96-8p, an RFC analysis must account for all relevant evidence in the record, including "evidence from attempts to work." [*Id.* (citing SSR 96-8p).] Thus, Plaintiff contends that the ALJ's RFC should have imposed additional restrictions to account for Plaintiff's alleged inability to maintain employment for a significant period of time. [*See id.*]

The ALJ, however, *did* consider Plaintiff's past attempts to work. The ALJ's RFC analysis explicitly stated that he considered "the entire record," [R. at 21], and at the hearing, he extensively reviewed Plaintiff's work history. [R. at 34-39.] He was thus aware that Plaintiff had held multiple positions and had "changed jobs a lot." [R. at 36-37.] He then cited this evidence in his RFC analysis, as he specifically observed that Plaintiff "worked for a number of years after her accident," and that she "generally worked for short periods or worked part time." [R. at 23.] Plaintiff's argument on this point thus amounts to an argument that the ALJ should have placed more weight on Plaintiff's inability to hold other jobs, and the Court is not inclined to accept such an argument. *See, e.g.*, *Overman*, 546 F.3d at 462 (noting that a reviewing court "do[es] not reweigh the evidence or substitute [its] judgment for that of the ALJ"). Instead, the Court finds that substantial evidence supports the ALJ's RFC analysis, and Plaintiff's argument does not require remand.

## Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision that Wise is not disabled. The Magistrate Judge therefore recommends that the

Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 02/18/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov